UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MIHAELA ILLIANA POPA,

        Plaintiff,

   -v-                                     No.  08 Civ. 8138 (LTS)(KNF)

PRICEWATERHOUSECOOPERS LLP,

        Defendant.

--------------------------------------------------------x

## Memorandum Opinion and Order

      Plaintiff Mihaela Illiana Popa ("Plaintiff" or "Popa"), a former employee of

PricewaterhouseCoopers LLP ("PWC" or "Defendant"), brings this action pro se, asserting claims

for employment discrimination and retaliation based on her race, gender, national origin, age[1] and

disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17

("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 (the

"ADA"), New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 297,

and New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code §§ 8-101 to

131, against PWC.  Defendant moves the Court to dismiss the complaint pursuant to Federal Rule

---

[1]     It is not clear from her complaint whether Plaintiff is asserting a violation of the Age
Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-624.
(Compare Compl. at p. 1 (ADEA claim not checked off on pro se complaint form)
with p. 3 (indicating that discrimination was based on age).)  However, insofar as
Plaintiff is intending to assert an ADEA claim, such claim fails on its face.  Plaintiff
lists her date of birth as January 19, 1978, and thus, as a person still under 40 years
of age she does not have an ADEA cause of action.  See D'Cunha v.
Genovese/Eckerd Corp., 479 F.3d 193 (2d Cir. 2007) ("The ADEA prohibits
discrimination in employment on the basis of age against persons aged 40 or older."
citing 29 U.S.C. §§ 623(a)(1), 631(a).)

of Civil Procedure 12(b)(6).[2]  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

BACKGROUND

The following facts are taken from Plaintiff's complaint (the "Complaint"), the Equal Employment Opportunity Commission (the "EEOC") Dismissal and Notice of Rights (the "Right to Sue Letter") and the EEOC Charge of Discrimination (the "EEOC Charge"), both of which are referenced in and attached to the Complaint.  Plaintiff's factual allegations are presumed to be true for the purpose of this motion practice.

Plaintiff is a Romanian national with a bachelors degree in Business Administration from the Academy of Economic Studies in Bucharest and an MBA from the University of Illinois. (Compl. ¶ 1.)

The Chicago Office

Plaintiff was hired by PWC's Chicago office in June 2003.  (Id. at ¶1.)  During Plaintiff's employment in the Chicago office, Plaintiff was subject to snide and belittling remarks from the hiring partner and other staff, based on Plaintiff's Romanian national origin and her

---

[2]     Defendant moves in the alternative for summary judgment, based on additional materials submitted in support of its motion, specifically an affirmation from an attorney in Defendant's General Counsel's office regarding how the firm is structured.  The Court has not considered those materials in reaching its decision in this Opinion; the Court has limited its review to materials appropriate for consideration on a motion to dismiss, specifically those written materials that Plaintiff has attached to the Complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotations omitted)).

gender.  (Id. at ¶¶ 2-3.)  Plaintiff alleges that she was sexually harassed by a senior associate and others in the office.  (Id. at ¶¶ 4-5.)  The senior associate, a partner, and Plaintiff's career advisor made remarks and inquiries about Plaintiff's personal life.  (Id. at ¶ 6.)  Plaintiff asserts that she was assigned very menial work, for which she was overqualified.  (Id. at ¶ 7.)  Plaintiff became very stressed and depressed as a result of the bullying, harassment and intimidating remarks and behavior in her office environment, and tried to address the situation in a February 2004 discussion with the senior associate.  (Id. at ¶ 8.)  This attempt was unsuccessful, as the senior associate was aggressive and derogatory towards Plaintiff.  (Id.)  He constantly advised her to leave the department.  (Id.)

In May 2004, Plaintiff interviewed with a Director in the London office.[3]  (Id. at ¶ 9.)  The Plaintiff was made an offer to work in the London office and she began her work there in September/October 2004.  (Id.)  Plaintiff's final months working in the Chicago office were very unpleasant, she continued to work long hours, undertake extensive travel, be subject to harassment and to belittling and derogatory remarks.  (Id. at ¶ 10.)  Plaintiff alleges that her career advisor and another employee attempted to introduce negative remarks in one of Plaintiff's last appraisals, but that the appraisal was salvaged by a senior manager from the New York office.  (Id.)  Prior to Plaintiff's departure from the Chicago office, one of the partners made remarks about his ability to break Plaintiff's career, if he wanted to, and that Plaintiff was being shipped off to London because she had upset him.  (Id. at ¶ 11.)  Plaintiff confided in a co-worker about the harassment and the menial nature of the work she was being assigned; the co-worker indicated that another female co-

---

[3]     As the Court is not addressing Defendant's arguments that the London and Chicago PWC are two separate and distinct entities, references to the "Chicago office" and the "London office" are not intended to indicate any conclusions as to the relationship between these entities.

worker was experiencing similar issues.  (<u>Id.</u> at ¶12.)  At her co-worker's insistence, Plaintiff had

an informal discussion with HR on the last day of her employment in the Chicago office, August

27, 2004.  (<u>Id.</u>)  Plaintiff's final appraisal was very rushed, and because there was little input from

her career advisor, Plaintiff believes it was received negatively by the London office.  (<u>Id.</u>)

<u>The London Office</u>

       Plaintiff's move to London was very difficult, and she felt that she was under

intense scrutiny from the beginning. (<u>Id.</u> at ¶ 13.)  Plaintiff alleges that she was suffering from post-

traumatic stress disorder following the events in Chicago.  (<u>Id.</u>)  According to Plaintiff, she was not

treated well in the London office and this inhibited her recovery.  (<u>Id.</u>)  She believes her treatment

there was a direct result of the complaint that she made in the US.  (<u>Id.</u>)  The London office did not

allow her to settle in properly before assigning her work, including work that was of high

responsibility and outside her prior experience.  (<u>Id.</u>)  Plaintiff tried to transfer to another

department in the office that was more in line with her background and education but, following a

discussion with the partner from the Chicago office and her London career advisor, she remained in

the Forensic practice.  (<u>Id.</u> at ¶ 14.)

       In the nearly two years that Plaintiff worked in the London office, she was unable to

advance her career, she was passed over for promotion several times, was assigned menial and

inappropriate work and was bullied and harassed.  (<u>Id.</u> at ¶ 15.)  Plaintiff alleges that her health

deteriorated as a result of her treatment and that in March 2006, following a bad appraisal, she was

advised by the partner to leave the UK practice for a role in industry.  (<u>Id.</u>)  Plaintiff remained for

several months, but the work that she was assigned resulted in very long hours, with little support,

for difficult clients on the types of assignments she had indicated that she was not interested in.  (<u>Id.</u>

at ¶ 16.)  Plaintiff alleges that she was suffering from chronic fatigue in May 2006, and in June

2006, she had a significant nervous breakdown.  (Id.)  Following therapy, she was advised to leave

her job, which she did in December 2006.  (Id.)  Plaintiff alleges that at her new employment she

was subject to further retaliation and victimization, possibly as a result of unfavorable references.

(Id. at ¶ 17.)  According to Plaintiff, she has suffered a relapse, and has not fully recovered.  (Id. at

¶ 18.)  She believes that retaliation is likely to continue.  (Id.)  It appears from the documents

attached to the Complaint that Plaintiff filed a grievance pursuant to Defendant's grievance

procedures before leaving the London office.  (See EEOC Charge and attached documents.)

Plaintiff's EEOC Charge

        Plaintiff filed a charge with the EEOC alleging discrimination based on race, sex,

national origin, age, and disability and retaliation, dated September 28, 2007.  (See EEOC Charge.)

Plaintiff was sent a Dismissal and Notice of Rights (the "Right to Sue Letter") dated March 20,

2008, that indicated that the EEOC was closing its file on this charge because the charge had not

been timely filed.  (See Right to Sue Letter.)  In her Complaint, Plaintiff indicates that she received

the Right to Sue Letter on May 27, 2008.  (Compl. at p. 4.)

Procedural History

        Plaintiff initiated this action by filing her Complaint, which was received by the Pro

Se Office on August 27, 2008.  Defendant moved to dismiss this action on January 28, 2009.  On

May 6, 2009, in light of the absence of any response from Plaintiff other than a change of address

memorandum and the Court's concern that service of Defendant's motion may have been made to

an outdated address, the Court denied Defendant's motion without prejudice to renewal upon filing

of an affidavit of service indicating that Plaintiff had been served at her current address.  (See

Docket Entry No. 13.)  Subsequently, Defendant submitted a letter and, at the Court's direction, an

affidavit attesting to the fact that Plaintiff had actually acknowledged receipt of a hard copy of the

Defendant's motion, and the Court reinstated the motion.  (See Docket Entry Nos. 14-15.)  The

Court subsequently received a letter dated May 20, 2009, from Plaintiff, purportedly in response to

Defendant's motion.  (See Docket Entry No. 17.)  Defendant filed a Reply in support of its motion.

(See Docket Entry Nos. 16, 18.)  The Court also received a July 14, 2009, letter from Plaintiff. (See

Docket Entry No. 20.)

      The Court has reviewed thoroughly and considered carefully all of the parties'

submissions.  For the following reasons, Defendant's motion to dismiss the Complaint is granted.

D<small>ISCUSSION</small>

Legal Standard

      In deciding a motion to dismiss a complaint for failure to state a claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the non-conclusory

factual allegations in the complaint, and draws all reasonable inferences in Plaintiff's favor.  Roth v.

Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).  "A

pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action

will not do."  Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).  This Twombly standard

applies to all civil actions.  Id. at 1953.  "Even after Twombly, though, [courts] remain obligated to

construe a pro se complaint liberally."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

Plaintiff's Federal Claims

      Plaintiff asserts that Defendant discriminated and retaliated against her based on

race, gender, national origin and disability, in violation of Title VII and the ADA.  Defendant

argues that Plaintiff's claims are time-barred.

In a state such as New York, which maintains its own anti-discrimination agency with investigative powers, a party must file a charge with the EEOC within 300 days from "the alleged unlawful employment practice" under both Title VII and the ADA.  42 U.S.C. § 2000e-5 (e)(1); 42 U.S.C. § 12117(a).  The party's failure to file a charge within this time period will cause her to lose her right to recover under the federal statute.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002).  Plaintiff's EEOC charge is dated September 28, 2007.  Any alleged discriminatory acts that occurred more than 300 days before Plaintiff filed her EEOC charge, thus, are not actionable under these statutes.  Because Plaintiff's final day of employment in the Chicago PWC office was August 27, 2004, more than three years before she filed the EEOC charge, none of the discriminatory conduct alleged to have occurred during Plaintiff's employment in the Chicago office is actionable.

According to her EEOC charge, Plaintiff's employment with the London office ended on December 2, 2006.[4]  Thus, it appears that Plaintiff filed her charge exactly 300 days after leaving the London office.  Thus, the charge was untimely as to any conduct that is alleged to have occurred in the London office prior to December 2, 2006.

The Complaint does not allege any specific instances of discriminatory or retaliatory conduct on the final day of Plaintiff's employment or after Plaintiff left the London office of PWC, Plaintiff only alleges generally that she "was subject to further retaliation and victimization in her

---

[4]     Plaintiff does not provide an exact employment termination date in the Complaint, but indicates in her EEOC charge that she left the firm on December 2, 2006.  This is consistent with one of the two "latest" dates of discrimination that Plaintiff lists on her EEOC charge.  (See EEOC Charge.)  Although December 2, 2006, appears to have been a Saturday, the Court accepts Plaintiff's allegations regarding her final day of employment as true and begins calculating the 300 day period on December 3, 2006.

new employment," speculates that this was "possibly through unfavorable references" and asserts that she "believes retaliation is likely to continue unless an act of the Court will stop it."  (Compl. at ¶¶ 17, 18.)  However, in Plaintiff's EEOC charge, she provides a second date for the "latest" discriminatory act suffered (in addition to the December 2, 2006, date) of May 8, 2007.  (See EEOC Charge.)  This date appears to correspond to the date of a letter from a PWC partner in the London office regarding Plaintiff's grievance, under stage two of PWC's grievance procedure. (See letter dated May 8, 2007, (the "May 8, 2007, letter") attached to the EEOC Charge.)  The letter purports to address Plaintiff's appeal of the outcome of the stage one meeting.  The partner informs Plaintiff that he rejects all of her claims, that the letter formally concludes the PWC grievance procedures and that the decision is final.  Id.

Even assuming that the unfavorable grievance decision constituted some form of actionable retaliation or discrimination and fell within the 300 days preceding Plaintiff's EEOC Charge, Plaintiff's claims must nonetheless be dismissed as untimely.  Plaintiff's Right to Sue Letter clearly stated in a bold, underlined font on the face of the letter that her lawsuit must be filed within ninety days of receipt of the notice, or her right to sue based on the charges included therein would be lost.  (See Right to Sue Letter); see also 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. §§ 12117(a) (adopting Title VII limitations period for the ADA); Celestine v. Cold Crest Care Center, 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007) ("The 90-day limit at issue here is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions.")  According to Plaintiff, she received the Right to Sue Letter on May 27, 2008, more than two months after it was issued.  Assuming for the purpose of this motion practice

that this was the date on which Plaintiff received the letter,[5] Plaintiff failed to file her Complaint within 90 days of receipt.  She filed the Complaint on August 27, 2008, outside of the 90-day time-frame.  See Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) ("While the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." (internal quotation marks omitted).)  Similarly, if Plaintiff's Complaint is read to allege a constructive discharge occurring on the final day of her employment with the London office, and, thus, conduct subject to a timely-filed EEOC charge, her failure to file the Complaint within 90 days of receipt of the Right to Sue Letter precludes her from bringing suit based on any such alleged constructive discharge.

Although these time periods may be equitably tolled where a plaintiff has acted diligently and extraordinary circumstances prevented her from timely filing, the plaintiff has the burden of "establishing the appropriateness of equitable tolling."  Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000.)  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks and citations omitted).  Plaintiff has failed to allege facts, either in the Complaint or in any of her communications in response to the motion, that raise any plausible issue as to her entitlement to

---

[5]     Compare Presser v. Key Food Stores Co-Op., Inc., 316 Fed. Appx. 9, at *11 (2d Cir. 2009) district court properly dismissed plaintiff's ADEA claim as time-barred because it was filed more than ninety days after receipt of the Right to Sue Letter, which, in the absence of evidence of date of receipt, the district court presumed to have occurred three days after mailing.

equitable tolling of either the 300-day time-period for filing the EEOC Charge or the 90-day time-period for filing a complaint.

Plaintiff has not made any factual proffers regarding her reasonable diligence during either of the time periods at issue.  See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002) ("Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled.").  Nor has Plaintiff proffered allegations of extraordinary circumstances warranting application of the doctrine. Plaintiff's May 20, 2009, response (the "May 20, 2009, Opp.") purports to explain the reason why she did not receive the EEOC Right to Sue Letter until more than two months after it was issued, but does not explain her delay in filing the Complaint once she received that Right to Sue Letter. (May 20, 2009, Opp.)  Additionally, although Plaintiff notes that she has "not yet secured a level of Counsel that [she] is satisfied with," she does not argue that an attempt to secure counsel was the reason for delay in filing either the EEOC charge or the Complaint.  (May 20, 2009, Opp. at 1.) Instead she argues only that the reason she was slow to respond to the January 2009 motion to dismiss was because of matters beyond her control and a disabling condition.  Furthermore, although Plaintiff alleges that she has had a disabling condition throughout the case, she does not specify how any alleged medical condition prevented her from meeting the filing deadlines.  See Boos, 201 F.3d at 185 (plaintiff's vague and conclusory claims of mental illness "without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling"); see also Gager v. Principi, 300 Fed. Appx. 30, at *30 (2d Cir. 2008) (pro se plaintiff's claims that she had lost track of time and dates due to deaths in her family and her father's illness, were not circumstances sufficient to warrant equitable tolling); Gannon v.

<u>Continuum Health Partners, Inc.</u>, No. 06 Civ. 5133, 2007 WL 2040579, at * 5 (S.D.N.Y. July 12, 2007) ("[C]ounsel has not indicated how plaintiff's depression adversely affects her capacity to function.  Plaintiff has therefore, failed to established that equitable [t]olling is warranted because of her mental illness.").  Thus the Court finds that Plaintiff has not raised any triable issue as to whether she is entitled to equitable tolling of the 300-day or 90-day time periods and her Title VII and ADA claims must be dismissed as untimely.

<u>Plaintiff's NYSHRL and NYCHRL Claims</u>

Plaintiff asserts violations of the NYSHRL and the NYCHRL.  However, Plaintiff does not allege that she was ever a citizen of New York or that any of the alleged discriminatory or retaliatory acts occurred in New York.  "A nonresident plaintiff may invoke the protection of the City and State Human Rights Laws only by proving that the discriminatory act or acts took place within the jurisdiction in question."  <u>Pearce v. Manhattan Ensemble Theater, Inc.</u>, 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007); <u>see also</u> <u>Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni</u>, 549 F. Supp. 2d 549, 551 (S.D.N.Y. 2008) ("When a non-resident seeks to invoke the coverage of the New York City and State human rights laws, he or she must show that the alleged discrimination occurred within New York City and New York State respectively."); <u>Hoffman v. Parade Publications</u>, 878 N.Y.S.2d 320, 322 (1st Dep't 2009) ("The New York State and New York City Human Rights Laws were enacted to combat discrimination within this state and city respectively.").[6]  Plaintiff's only allegation with respect to New York is that a senior manager in the

---

[6]    In <u>Hoffman</u>, the First Department held that, contrary to the decisions of some federal courts in this district, "if an employer located in New York made discriminatory hiring or firing decisions, those decisions would be properly viewed as discriminatory acts occurring within the boundaries of New York." <u>Hoffman</u>, 878 N.Y.S.2d at 324.  As Plaintiff has not alleged that any discriminatory hiring or firing decisions were made in New York, the First Department's analysis of the impact of

New York office salvaged a review of hers. This allegation, which not only fails to allege a discriminatory or retaliatory act, but actually alleges that the conduct in the New York office was beneficial to Plaintiff, does not provide Plaintiff with standing to invoke the NYSHRL or NYCHRL protections. Plaintiff's NYSHRL and NYCHRL claims are therefore dismissed, without prejudice, for lack of standing.

## CONCLUSION

For the foregoing reasons Defendant's motion to dismiss the Complaint is granted. This Memorandum Opinion resolves docket entry no. 9. The Clerk of Court is respectfully requested to enter judgment dismissing the Complaint, and close this case.

SO ORDERED.

Dated: New York, New York
       August 14, 2009

LAURA TAYLOR SWAIN
United States District Judge

---

discriminatory acts occurring in New York does not affect the Court's analysis.